Filed March 8, 1887.

13,534.

## THE STATE v. WOOD.

TAXES.—*County Board of Equalization.*—*Assessment of Omitted Property.*— *Examination of Witnesses.*—*Power to Administer Oaths.*—*Perjury.*—A county board of equalization has power, and it is one of its duties, to add and assess omitted property, and to investigate and determine whether a citizen is the owner of property, subject to taxation, which he has omitted from his tax lists.   To that end it may examine witnesses, each member having power to administer all necessary oaths in the discharge

of the duties of the board, and a prosecution for perjury may be predicated upon testimony given in such cases.

CRIMINAL LAW.—*False Tax List.—Perjury.—Indictment.—Residence of Defendant.—Materiality of Testimony.*—An indictment, charging perjury in testimony given before a county board of equalization by a taxpayer concerning personal property owned by him on the 1st day of April, must show either that the defendant was a resident of the county on that day, or that, having become a resident subsequently, he had not been assessed on the property in question in the taxing district from which he had moved, in order that it may appear that his testimony was touching a material matter.

From the Pulaski Circuit Court.

*S. A. McCracken,* Prosecuting Attorney, *T. S. Gorham, N. L. Agnew* and *B. Borders,* for the State.

*J. C. Nye* and *R. A. Nye,* for appellee.

ZOLLARS, J.—Appellee is charged in the indictment with having committed perjury, in that he swore falsely in a matter pending before the county board of equalization.

The principal grounds upon which the indictment was quashed by the court below, as we learn from the briefs of counsel, are: *First.* That neither the president of the board of equalization, nor any other member of that board, had or has any authority to administer oaths; and, *Second.* That the board of equalization, at the time the oath was administered, was not engaged in the discharge of any of its statutory duties, and had no authority to try and determine the matter about which appellee was examined as a witness.

As stated in the indictment, the board of equalization was engaged in an investigation to determine whether or not appellee had personal property, such as money loaned, etc., which he had omitted from his tax lists, and which should be added and assessed.

The purpose of the pleader was to charge appellee with the crime of perjury as that offence is defined in section 2006, R. S. 1881, which is as follows: " Whoever, having taken a lawful oath or affirmation in any matter in which, by law, an oath or affirmation may be required, shall, upon such oath

or affirmation, swear or affirm wilfully, corruptly, and falsely touching a matter material to the point in question, shall be deemed guilty of perjury, and, upon conviction thereof, shall be imprisoned," etc.

We examine the questions discussed by counsel in the inverse order.

Has a county board of equalization authority, and is it one of its duties, to add and assess omitted property? And if so, has it authority to institute and carry on an investigation to determine whether or not any portion of a citizen's property has been omitted from his tax lists, and by the assessor? For an answer to these inquiries, we must go to the statutes. Section 6397 provides for the county board of equalization, to be composed of the board of county commissioners and four freeholders to be appointed by the circuit court; that such board shall meet on the first Monday of June of each year, two weeks notice of the meeting being given, for the purpose of equalization; that it shall have the power to hear complaints of any owner of personal property, etc., and to correct any list or valuation as they may deem proper; that it shall have power to equalize the valuation made by the assessors, either by adding to or deducting from their valuation such sums as to said board shall appear just and equitable, "and, in the discharge of this duty, may send for persons and papers;" that "such board shall, also, have power to add and assess omitted property."

Section 6399, amongst other things, provides that the board shall have power, in proper cases, to reduce or increase the valuation of any particular tract or lot, upon complaint made to them, provided that no increase shall be made upon complaint of another without notice to the owner or his agent.

Section 6400 provides that the board, in certain cases, may set aside the whole assessment of the county, or of a township or townships therein, and order a new assessment.

Section 6317 provides that, "For the purpose of properly listing and assessing property for taxation, and equalizing,

and collecting taxes, county auditors, auditor of state, and
boards of equalization shall each have the right to inspect
and examine the records of all public offices, * * and they
shall also have power to administer all necessary oaths or
affirmations in the discharge of their duties; and it shall be the
duty of every assessor or other officer charged with the duty
of listing property for taxation, or charged with the duty of
collecting taxes, to give, in writing, all information he may
acquire in reference to the concealment of property from tax--
ation by any person or corporation * * * to county auditors,
auditor of state, or boards of equalization aforesaid."

Section 6399, it will be observed, gives the county board
of equalization power to lessen or increase the valuation of
any tract or lot of real estate, upon complaint. If an increase
of valuation is asked, the owner is to be notified. The pur-
pose of the notice is to give such owner a chance to be heard.

Upon his appearance, the board must decide between him
and the complainant, and in order to reach a correct conclu- ·
sion may, doubtless, consider such testimony as may be
available.

Section 6397, as we have stated, gives the board power to
hear complaints of any owner of personal property, to cor--
rect any list or valuation as they may deem proper, and to
add and assess omitted property. And, in order that the
board may so add and assess omitted property, section 6317
gives it the right to inspect records, books and papers, and
makes it the duty of assessors to furnish whatever informa-
tion they may have in reference to the " concealment of prop-
erty from taxation by any person or corporation."

Having these powers, it is clearly the duty of the board to
exercise them in proper cases. *Town of Centerville* v. *Woods,*
57 Ind. 192; *City of Logansport* v. *Dick,* 70 Ind. 65 (80)
(36 Am. R. 166). ·

In the latter part of section 6397, the powers are spoken of
as duties. After the enumeration of certain powers it is added,

" and, in the discharge of this duty, 'the board' may send for persons and papers."

Preceding that is the power to equalize, and the power to hear complaints of any owner of personal property, and to correct any list or valuation.

A proper construction of the section and the whole act in relation to the powers and duties of county boards of equalization requires a holding, we think, that the board has the power to send for persons and papers, not only for the purpose of a general equalization, but also for the purpose of reaching a correct conclusion upon the complaints of owners of personal property, and for the purpose of determining what property has been omitted, and what should be added and assessed, although the grant of power to add and assess omitted property follows, in the section, the grant of power to send for persons and papers.

The power to add and assess omitted property, in many cases, would amount to but little, if the board had no power to investigate and determine whether or not property had been so omitted.

And so, the information by the assessor as to concealed property might amount to but little, if the board had no authority, by proper investigation, to determine whether or not the information is correct. And if the board is to act upon such information alone, and add and assess, as omitted property, such as is reported as having been concealed, grievous wrongs might result to taxpayers.

The power to add and assess omitted property carries with it the power to investigate and determine as to whom the property belongs, and whether or not it has, in fact, been omitted from the tax lists of the owner. And the power to make such investigation includes the power to get information from the supposed owner and other witnesses. See Bishop Statutory Crimes, section 137.

Mr. Bishop there quotes in illustration, and with approval, the following : "Where a statute gave the King's justices

power ' to take the oaths ' of persons, it carried with it, by intendment, authority to issue their precept, and bring the persons before them to be sworn."

Without extending the opinion upon this branch of the case, our conclusion is, that the board of equalization had the power to investigate and determine whether or not appellee was the owner of money loaned, etc., which he had not included in his tax lists, and which was, therefore, omitted property, and that, in order to make the investigation, it had the power to examine witnesses; and further, that, having such power, it was in the exercise of a duty.

It is charged in the indictment, that the president of the board administered the oath to appellee.

The law makes no provision for a president of the board. Whatever authority he had to administer an oath was not by reason of being president of the board, but by reason of being a member of the board. Whatever authority he had to administer an oath, each member had when the board was in session. Had they such authority?

Section 6317 provides, as we have seen, that for the purpose of listing and assessing property for taxation, etc., county auditors, etc., and boards of equalization, shall each have the right to inspect, etc., "and they shall also have power to administer all necessary oaths or affirmations in the discharge of their duties."

The right to administer oaths is thus given to the board of equalization. The several members constitute the board. It surely could not have been intended that all the members of the board should, at the same time, administer the oath. Each member of the board when in session must have the authority to administer oaths or the grant of power must fail.

We have concluded after some hesitation, that, by virtue of the above statute, each member of the county board of equalization, when in session, has authority to administer all necessary oaths in the discharge of the duties of the board.

The board had authority to make the investigation. It

had authority by any member of it to administer the oath to appellee, and it had authority to require him to be sworn and testify as a witness, and answer as to his money loaned, etc., which he had not listed for taxation.

The board was not, nor was it necessary that it should be, a court. It was not, and could not be, sitting as a court. It was in the exercise of statutory powers and duties, which duties, perhaps, may be said to be *quasi* judicial. The matter before the board was a matter in which by law an oath may be required; and, therefore, if appellee testified falsely after having been sworn, he is guilty of perjury.

The indictment, however, is bad for other reasons, and hence the judgment of the court below must be affirmed. A charge of perjury, in order to be good, must show that the oath was touching a matter material to the point in question. Appellee, it is charged, falsely testified, after being sworn, that on the 1st day of April, 1886, he had no moneys on hand or on deposit within or without the State, subject to his order, check or draft; that, on said 1st day of April, 1886, he had no more than four hundred dollars of money loaned, either on time or on call, and had no rights, credits, effects, mortgages, notes, or choses in action, except what he had included in his tax lists delivered to the assessor, etc.

The county board of equalization has authority to add and assess omitted property, but that property, of course, must be such as is taxable in the county in which the board has authority to act, and for the current year. In this case, it is necessary that it should be made to appear that the personal property in question was taxable in Pulaski county for the year 1886. It must, therefore, be made to appear that the appellee was the owner of the property on the 1st day of April, 1886. That is, perhaps, shown. But in order to show that such property was taxable in Pulaski county for the year 1886, it must be further shown, and made to appear, that appellee was a resident of that county on the 1st day of April, 1886, or that, having become a resident of that county

subsequent to the 1st day of April, 1886, he had not been assessed on his said property in another State or county from which he may have moved. We need not repeat upon this point what has so recently been said and ruled in the case of *State* v. *Reynolds*, 108 Ind. 353.

If appellee was not a resident of Pulaski county on the 1st day of April, 1886, or if, having become a resident of that county after the 1st day of April, 1886, he was assessed on the said property in the county or State from which he moved, the property was not taxable in Pulaski county for that year. And if the property was not so taxable, his testimony was not touching a matter material, and hence he could not be guilty of perjury. See *State* v. *Reynolds, supra.*

It is not charged in, or shown by, the indictment, that appellee was a resident of Pulaski county on the 1st day of April, 1886. Nor is it charged or shown that his said property was not taxed for the year 1886, in a State or county from which he may have moved subsequent to the 1st day of April, 1886.

The indictment is, therefore, bad, and the judgment must be and is affirmed.

