Filed October 27, 1892.

---

## No. 594.

## BURNS *v.* THE STATE.

TAXES.—*Omitted Property or Undervaluation.—Right of County Assessor to Examine Witnesses Concerning.—Refusal of Witness to be Sworn.—Penalty.*—Under the tax law of 1891 (Acts 1891, p. 199), the county assessor is authorized to examine under oath any person whom he may suppose to have knowledge concerning omitted property, or the valuation of that which has been undervalued. If any person refuses to be sworn by the assessor for the purpose of eliciting such information, he may be fined, or fined and imprisoned, for such refusal.

SAME.—*Indictment.—Residence of Property-Owners.*—It was not necessary in an indictment or information charging the accused with a refusal to be sworn by the county assessor, under the provisions of the tax law of 1891, to aver that the persons as to whose property the assessor was led

Burns *v.* The State.

to inquire were residents of any certain township in the county where the prosecution was pending. Under the present law one may be an inhabitant of one county, and yet be required to list his personal property in another.

SAME.—*Indictment.—Residence of Accused.*—It was not necessary either to aver that the accused was a resident of some particular township or county in the State. If he possessed any information, and was within the limits of the assessor's territory as charged, it was his duty to be sworn, and if any improper question had then been propounded to him by the officer, he could refuse to answer.

SAME.—*Indictment.—Evidentiary Facts.*—The indictment or information need not set forth all the evidentiary facts upon which the State relies. To charge the offence substantially in the language of the statute is all the defendant in such case can demand, and if the act of the assessor, for any reason not disclosed in the law, was void of authority, it devolves upon the defence to show it.

SAME.—*Form of Oath to be Administered.*—The following oath was sought to be administered by the assessor to the accused: "Do you solemnly swear that you will answer such questions that may be asked you by the county assessor, touching the persons whose property is affected by this examination, to wit:"

*Held,* that the oath was unobjectionable in form.

SAME.—*Right of County Assessor to Examine Witnesses.*—While the power to examine witnesses is only conferred on township assessors by sections 51 and 56 of the act of 1891, yet by section 113 of the act, county assessors are given the same powers as township assessors, including of course the right to examine witnesses.

SUBPŒNA.—*Appearance in Obedience to.—Waiver.*—The appearance of a defendant in obedience to a subpœna waives any question as to its form.

From the Huntington Circuit Court.

*W. H. Trammel, J. C. Branyan* and *M. L. Spencer,* for appellant.

*W. A. Branyan,* Prosecuting Attorney, for the State.

REINHARD, J.—The appellant was tried and convicted in the circuit court for an alleged violation of one of the provisions of the tax law of 1891. Acts 1891, p. 199 *et seq.* The appellant, at the proper time, moved to quash the affidavit and information, but the motion was overruled, and he reserved an exception. In the motion for a new trial one of the grounds assigned is the insufficiency of the evidence

to sustain the finding. The questions we are asked to decide upon this appeal, therefore, are—

1. The sufficiency of the affidavit and information.

2. The sufficiency of the evidence to sustain the finding.

The substance of the averments contained in the affidavit and information is that the appellant, on the 24th day of June, 1891, at the county of Huntington, and State of Indiana, did unlawfully refuse to be sworn or affirmed to testify upon request of Isaac E. Fisher, the county assessor of said county and State, for the purpose of eliciting evidence of the existence of personal property, in listing the property of Jacob Boos, John Gibler, William Wiley, William Griffith, Griffith & Son, and John M. Carl, for taxation, the said Fisher being then and there the duly elected, qualified and acting county assessor for said county and State, and as such assessor, and in his official capacity as such, he doubted the correctness of the lists returned by the above named persons, and he caused a subpœna to issue, which was served upon the appellant by the sheriff of said county, naming the day and place of appearance; that appellant did appear before said assessor at the time and place in said subpœna named, but that said appellant then and there unlawfully refused to to be sworn or affirmed as above charged.

Section 51 of the act under consideration is as follows:

"Sec. 51. In every case where any person shall neglect or refuse to make out and deliver a sworn statement of his property to the assessor as required by this act, or if the assessor shall be in doubt whether such statement is correct, such assessor is hereby authorized and required to examine on oath any other person whom he believes to have knowledge of the amount or value of any property owned or held by such person so neglecting or refusing; and such assessor is authorized to set down and assess to such person such amount of personal property as he may deem just."

The act provides (section 3) that all property within the

jurisdiction of the State shall be subject to taxation, unless expressly exempted.

It further provides (section 11) that "All personal property shall be assessed to the owner in the township, town or city, of which he is an inhabitant on the first day of April of the year for which the assessment is made," with certain exceptions.

Section 14 enacts that personal property in transit shall be listed where the owner resides, unless the property is intended for a particular business, in which case it shall be listed where it is situated.

By section 16 it is declared that property of bankers, brokers, stock jobbers, livery stables, hotels, saloons, eating houses, etc., shall be listed and assessed where the property is situated.

Section 20 makes it the duty of persons removing from one township to another between the first day of April and the first day of June, to list their property at the place where they are first called upon by the assessor.

The foregoing provisions (and the exceptions to section 11, which we have not quoted) specifically defined the township, town and city in which property of all descriptions is to be listed and assessed, and in connection with other provisions point out with sufficient certainty the duty of the assessor in each case.

Section 34 provides that "it shall be the duty of all assessors, and all other officers charged with the duty of listing property for taxation, or charged with the duty of collecting taxes, to give in writing all information they may acquire in reference to the concealment of property from taxation by any person or corporation before mentioned to the county auditor, auditor of state, or to the boards of review or tax commissioners."

Section 48 makes it the duty of the assessor, on the first day of April, or as soon thereafter as practicable before the first day of June, to call upon each person required to be

assessed and furnish him or her with the proper blanks for the purpose, and thereupon it becomes the duty of such person to make to the assessor a full and correct description of all the personal property such person is required to list.

In section 49 it is provided that the person so called upon may be required by the assessor to answer under oath certain interrogatories, and to make oath in stated form as to the correctness of the list furnished.

Sections 56 and 57 are as follows:

" Section 56. In every case where any person shall refuse to make out and deliver to the proper assessor the statement required under this act, or shall refuse to take and subscribe to any of the oaths or affirmations required by this act, the assessor shall proceed to ascertain.the number of each description of the several enumerated articles of property and the value thereof, and *for this purpose he may examine on oath any person or persons whom he may suppose to have knowledge thereof*, and such assessor shall make a note of such refusal in a column opposite the person's name, and the county auditor shall add to such valuation when returned by the assessor fifty per centum on the value so returned.

" Section 57. If any person required by the assessor to give evidence, as provided in the preceding section, or in any case when interrogated by the assessor as to any property real or personal, of himself or others, shall refuse to be sworn or affirm, or if having been sworn or affirmed, he shall refuse to answer the interrogatories hereinbefore set out, or any other questions touching the subject of inquiry, such person upon conviction thereof shall be fined in any sum not more than five hundred dollars, nor less than ten dollars, to which may be added imprisonment in the county jail not exceeding six months."

In section 113 it is declared that the county assessor is given the same powers for the examination of persons and property and the discovery and assessment of property as township assessors; and it is made the duty of such county

assessor to list and assess any omitted property he may discover that should be assessed, etc.

Such are the provisions of the law upon which the State relies as constituting the authority of the county assessor to require of the appellant to take an oath such as he sought to administer in the present case, and for the refusal to take which this prosecution was instituted against the appellant.

Obviously, the chief aim of the enactment under consideration was to subject to taxation all property not specifically exempt, and for that purpose to assess such property at a fair cash valuation. Under former laws, much trouble and difficulty was experienced in securing anything approaching a full, fair and equitable listing or valuation. One of the mischiefs of former laws upon this subject was the number of opportunities afforded for evasion. Owners of property have always been numerous who have been successful in finding excuses to diminish their just and proportionate shares of the burden of taxation, and in many cases the law failed to reach those who even without pretext or excuse altogether omitted to give it in for that purpose. To remedy this wrong was one of the prime objects of the provisions under consideration.

We are not concerned in any way with the constitutionality or validity of the law, as the parties have raised no question of that character. The principal contention of appellant's counsel is, that there is no authority conferred upon the assessor by the law for requiring the oath which the appellant is charged with having refused to take.

We have stated our view as to the aim and purpose of the law. This must not be lost sight of in the decision of the question before us. To accomplish the end aimed at one of the means employed by the Legislature in the present law was to confer upon the officers charged with its enforcement and execution additional powers to enable them to ferret out and bring to light every possible evasion of its provisions. To this end the assessor was clothed with authority not only

to swear the individual whose property is to be listed and assessed, but also to subject others to the process of being examined under oath, so as to enable that officer to make discovery of omitted property or of the valuation of that which has been undervalued. He is authorized by the law to extend his examinations over two classes of cases, viz.:

1. Those in which the owner of property neglected or refused to make out and deliver to him a list of such property as he is required to give in.

2. Those in which the assessor is in doubt as to the correctness of the list given in by the property-owner.

Appellant's counsel insist that it can not be determined from the averments of the affidavit and information what section of the statute the prosecution is predicated upon. This, however, would furnish no argument against the sufficiency of the charge if the different sections, when construed together, authorize the prosecution. We think, however, that the violation complained of comes mainly under section 57, where it is declared that if any person, in any case when interrogated by the assessor as to any property of himself or others, shall refuse to be sworn or affirm, etc., he shall be fined, etc. The appellant's counsel insist that the words "in any case" must be construed to refer to cases designated in section 56, and to no other,

We are not able to reach such a conclusion, however. There is nothing in the language employed in section 57 indicating that it was intended by the framers of the act to limit the penal provisions of section 57 to those violations enumerated in section 56. Had this been the intention it is difficult to see why the punishment provided for was expressly extended to "any case" and "any property" as to which the party might be interrogated. Nor is it easy to determine why reference should be made to the refusal of "interrogatories hereinbefore set out," when no interrogatories were contained or referred to in section 56. We think the language employed plainly bears upon its face the con-

struction we give it, that the refusal to be sworn "in any case" and as to "any property  *  *  *  of himself or others" entails upon the party called upon to do so the penalty provided in section 57 of the act. We think section 51 fully authorizes the assessor, when he is in doubt as to the correctness of the assessment of any one, to examine on oath any person he believes to have knowledge of the correct amount or value of the property owned or held by the person who has neglected, failed or refused to properly list the same, or is believed or suspected by the assessor to have done so. Counsel further insist that the Legislature could not have intended to confer upon the assessor power to call before him, arbitrarily, any one he chooses to so call because of his doubt, as this would place every citizen at the mercy of an assessor.

It was said by the Supreme Court in a case where the powers of boards of equalization to make investigation as to ownership and correct listing of certain property were considered :

"The power to add and assess omitted property carries with it the power to investigate and determine as to whom the property belongs, and whether or not it has, in fact, been omitted from the tax list of the owner. And the power to make such investigation includes the power to get information from the supposed owner and other witnesses. See Bishop, Stat. Crimes, section 137. Mr. Bishop there quotes in illustration, and with approval, the following : 'Where a statute gave the King's justices power to take the oaths of persons, it carried with it, by intendment, authority to issue their precept, and bring the persons before them to be sworn.'" *State* v. *Wood*, 110 Ind. 82.

In the present case the powers asserted by the assessor are not claimed by implication, but they are expressly conferred by the terms of the statute. Unless, therefore, we could say that the Legislature had no right to confer such power, we must declare that it exists in the present statute, as we do.

The mere fact, however, that a power conferred upon an official by the Legislature is an arbitrary one, or may be made such, does not prove the want of authority to confer it. In many instances, under our system of government, power which may be exercised in a very arbitrary manner is conferred upon officers—power which enables them, if disposed to so use it, to greatly annoy the most inoffensive and law-abiding citizens. A prosecuting attorney or his deputy may cause an entire community to be summoned before the grand jury, and interrogate them as to matters about which they may know nothing whatever, but we do not apprehend that this would furnish any excuse for a citizen of such community to disobey the summons of such grand jury, much less to refuse to be sworn or affirm after entering the jury-room. As under our system these officers are all elective, the people have an adequate remedy at the ballot-box against any such official who may see fit to thus abuse the trust conferred upon him by them.

It is argued, however, that the sections referred to give the power claimed to township assessors only. It is true that under sections 51 and 56, the power to examine witnesses is conferred only upon township assessors, and not upon county assessors. If there were no other section touching upon this point, the contention that this power rests only in them would have to prevail. But, as we have seen, by section 113, county assessors are given the same powers as township assessors, including, of course, the right to examine witnesses conferred in sections 51 and 56.

Counsel insist further, that it should have been averred that the persons as to whose property the assessor wished to inquire were lawfully required to list some property for taxation. We do not think this position is tenable, and the cases cited do not sustain counsel. The fact that it was not alleged that these property-owners were residents of any certain townships in the county of Huntington will not render the charge bad. Under the present law one may be an in-

habitant of one township, and yet be required to list some of his personal property in another.

It is very true that generally personal property is listed in the township where the owner resides, or "is an inhabitant," as the statute expresses it. But to this general provision there are several exceptions. Thus it is declared (section 11, exception 3) that all shares of bank stock shall be assessed to their owners in cities or towns where the bank is located. There are other exceptions, but this one may suffice as an example. Certainly, if the parties as to whom the assessor desired information had any shares in a bank with which the appellant was connected, and as to which stock he had knowledge, it could make no difference where they resided if the bank was located in any city or town in Huntington county. It is not necessary in such cases to set forth in the indictment or information all the evidentiary facts upon which the State relies. To charge the offence substantially in the language of the statute is all the defendant in such case can demand, and if the act of the assessor, for any reason not disclosed in the law, was void of authority, it devolves upon the defence to show it. Nor do we think it was necessary to aver that the appellant was a resident of some particular township or county in the state. If he possessed any information, and was within the limits of the assessor's territory as charged, it was his duty to be sworn, and if any improper question had then been propounded to him by the officer, it would have been time enough for the appellant to refuse to answer. The information appears to us to be a substantial compliance with the provisions of the law, and we do not regard it as being open to the objections urged against it.

The remaining question is, as we have seen, as to the sufficiency of the evidence. The undisputed evidence shows that the appellant was asked by the county assessor to take the following oath: "Do you solemnly swear that you will truly answer such questions that may be asked you by the

county assessor touching the persons whose property is affected by this examination, to wit." Then follow the names.

We see no objection to the form of this oath. It implied, of course, that the questions to be answered by him were to be only such questions as the law demanded that he should answer. Besides, the appellant does not seem to have based his objections to be sworn upon the form of the oath. The attorney who acted as the appellant's legal adviser before the assessor, testified as a witness for the appellant upon the trial of this cause. He stated that he (witness) had asked the assessor if any of the gentlemen as to whose property he wished to inquire " had refused to be qualified to their assessment, or if he" (the assessor) "had made any charge against either of them, or if he would say as an officer that he doubted any of their assessments, or that their assessments were wrong; that if any of these things existed I would advise Burns to testify. * * * If he claimed there was anything wrong, then Burns would testify, and Mr. Fisher" (the assessor) "said '.I don't want to say that any of these assessments are wrong.' He says 'I don't know.' And I asked him if he was willing to charge or file any complaint or set out in any way that these men's assessments were not right. If he would not, then Burns would refuse to testify, and he refused to do anything of that kind. He then prepared the oath as read to-day, when here, excepting it had not the names in, and Mr. Kenner then took the paper and added to the oath tendered by the assessor the names of these six or seven parties and then it was again read to Burns, and on the conditions given and on the refusal of the assessor to say anything as to whether or not there was anything wrong, there was something further said about his not having sent out any notice to these parties, and about his right and power to organize that court in the absence of all these parties whose property they were inquiring into. * * I prepared a statement embracing a part of what we offered

to do and told Mr. Burns to sign it and it was signed, and we handed it to the assessor," etc.

The statement referred to was also put in evidence, and was substantially as stated by the witness.

This shows clearly, as we think, that the form of the oath was not the obstacle in the way of the appellant's testifying.

Appellant's counsel also criticise the form of subpœna used in summoning the appellant to appear before the assessor. The appearance of the appellant in obedience to the subpœna waived any question as to its form. There is no merit in the point.

Without further prolonging this opinion it is sufficient, we think, to state that we regard the evidence sufficient, upon careful examination, to authorize the conviction of appellant.

Judgment affirmed.

Filed May 13, 1892; petition for a rehearing overruled Nov. 18, 1892.