# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1895, IN THE SEVENTY-
NINTH YEAR OF THE STATE.

---

No. 15,997.

## SATTERWHITE *v.* THE STATE.

MANDAMUS. — *Witness.* — *Taxes.* — *Board of Equalization.* — *Preliminary Examination.*—The court has power by mandate to order a witness to answer questions asked him by a board of equalization on a preliminary examination, under R. S. 1881, section 6317, although it cannot direct what answer he shall make.

SAME.—*Witness.*—*Tax Board of Equalization.*—*Relief.*—The fact that a petition by a board of equalization, for a mandamus to compel a witness to testify before it, demands more than the petitioner is entitled to, does not deprive the petitioner of the right to any relief.

TAXES.—*Board of Equalization.*—*Right to examine Books and Papers of Corporations and Banks.*—*Preliminary Examination.*—*Notice.* —*Omitted Property.*—A board of equalization has power, under R. S. 1881, section 6317, to inspect and examine the books and papers of corporations, including banks, and require a witness to testify, in making a preliminary examination to determine whether any property has been omitted from taxation, before giving any notice to any tax-payer that the board is about to assess property omitted by him.

From the Morgan Circuit Court.

Satterwhite *v.* The State.

*A. C. Harris, J. R. Wilson, W. R. Harrison* and *L. A. Cox,* for appellant.

*A. G. Smith,* Attorney-General, *E. S. Davis, J. H. Jordan, F. P. A. Phelps* and *O. Matthews,* for appellee.

HOWARD, J.—From the affidavit and information filed in .the court below, it appears that on the 15th day of September, 1890, the Morgan county board of equalization was in session in Martinsville, in said county, investigating according to law, and inquiring into the alleged fact, that divers tax-payers of said county, on the first day of April, 1890, had on deposit in the First National Bank of said city, large sums of money, then and there liable to taxation in said county for said year, which said tax-payers had omitted to report to the assessors, and that the same had not been assessed or taken into account in the assessments made for that year; that said board was, at the same time engaged in making investigation, as to persons who had converted their money into "greenbacks," for the fraudulent purpose of avoiding taxation thereon; that while in session, as aforesaid, said board subpœnaed appellant, who is the president of said bank, to appear before the board, and bring with him the book of deposits belonging to said bank, and to testify as to matters relating to such investigations; that in obedience to said subpœna appellant did appear before the board with the book of deposits, whereupon the board, for the purpose of aiding it in its said investigations, and not otherwise, demanded that it be permitted to examine said book of deposits; that appellant refused to permit an inspection of said book of deposits by the board, and refused to testify as to the matters aforesaid;—asking that a mandate issue from the court to require appellant to show cause, if any he has, why he refuses to allow the board to inspect said book of de-

posits, for the purpose aforesaid, or to answer the questions propounded to him, and that upon the final hearing he be ordered to do so.

A demurrer having been overruled to the complaint, the court entered an order requiring appellant to appear before the board of equalization, and "answer as to such questions as may be propounded to him by said board, touching or relating to the said investigation, as to any person or corporation of said county, named or mentioned by said board, who had money or bonds on deposit, or in the custody or control of the First National Bank of Martinsville, Indiana, on the first day of April, 1890, and also that he answer such questions of said board as may be propounded to him as to persons or corporations of said county, who within his knowledge, before the first day of April, converted, or caused to be converted, his or her taxable money into United States notes, called greenbacks, or into other non-taxable securities of the United States, and further, that he permit the said board to inspect and examine the books of the said bank, in his custody and control, in order to ascertain if any person or corporation of said county, that may be mentioned by it, had money, notes or bonds deposited therein on the said first day of April, 1890. All of which is ordered and commanded by the court, in order that the said board may discharge its duties in the premises, in investigating as to what property, if any, belonging to persons and corporations of said county, and owned and held by them on said first day of April, has been omitted from being assessed and returned for taxation for the year 1890. George W. Grubbs, judge."

In compliance with the order so made, the appellant appeared again before the board of equalization ; but, as appears further from the information, he refused to answer the questions as directed in said order, and re-

fused to permit the board to examine said books of the First National Bank, or to inform the board as to the deposits in said bank, or as to who had changed their deposits into greenbacks to escape taxation, and refused "to answer or show to said board from the books of said bank, the amount of deposits of Willard Parks, and about twenty-five others, or if they had changed their deposits into greenbacks on or about the first day of April, 1890."

On the filing of the affidavit and information, a rule was entered against appellant requiring him to show cause why he should not be punished as for contempt for his refusal to obey the order of the court as heretofore made.

The appellant appeared and demurred to the rule, to show cause ; and on the overruling of his demurrer, answered : first, by a general denial, and, secondly, by a special paragraph.

In the second paragraph of his answer, the appellant averred that he was not, as he believed, guilty of any contempt of court ; that he did not attempt in any way to avoid any proper examination of himself as a witness before the board of equalization ; that he did decline and refuse to disclose the names of persons who had deposits of money in said bank on the first day of April, 1890, or to permit said board to examine said books of said bank, "unless said board would first, by notice to particular persons, as required by the statutes in such cases, begin such proceedings as would give to said board the right and power to equalize, tax and charge with omitted property or money, or increase the value thereof, against the persons thus notified ; that he so refused because he was advised, and in good faith believed, and yet believes that such steps were necessary to be taken before said board had any jurisdiction of such persons, or

had the power to investigate said matters, and because as to said books of said bank, he had no right, and could not consistently with his duties as an officer of said bank, make such use of said books, or such exposure of its business transactions with such persons, until all preliminary steps made necessary by the statutes governing the matter had been complied with; that if said board shall, by proper notice, begin such proceedings against any person depositing or exchanging taxable for nontaxable paper or money to evade taxation in or with said bank, so as to give said board jurisdiction over such person, and thereby acquire the right to proceed against any such person, defendant will, if required, disclose as to such person all information in his possession, and any facts appearing on the books of said bank as to such person and his transactions with said bank, but his duty to said bank, and the interest of said bank forbid that he should do so under any other condition or circumstances."

A demurrer being sustained to this second paragraph of answer, the cause was submitted to the court upon the complaint and the general denial, and a plea of not guilty by the appellant; and the evidence being heard, the appellant was found guilty of contempt of the court in refusing to obey the order thereof, and was fined in the sum of one dollar. Over a motion for a new trial, judgment was entered accordingly.

It is first contended by appellant that the board had not jurisdiction of the matters of which it made inquiry of him; and that there was therefore no contempt of court in refusing to obey its order, requiring him to answer the questions as set out in its order.

The information upon which the order and rule of court were based, showed that the board was at the time in session investigating and inquiring into the al-

leged fact that divers tax-payers of the county had on the first day of April previous, on deposit in the bank in question, large sums of money liable to taxation for that year, which had not been reported to the assessors, and had not been listed for taxation.

Among the powers of the board of equalization, given by section 6397, R. S. 1881, as amended by an act approved March 9, 1889, (Acts 1889, p. 367; Ell. Supp., section 2127), were the follwing: "Power to hear complaints of any owner of personal property, except capital stock, franchises and rolling stock of railroads, to equalize the valuation of property and taxables made subsequent to the preceding first day of April, and to correct any list or valuation as they may deem proper;" also, "power to equalize the valuation made by the assessors, either by adding to or deducting from their valuations, such sums as to said board or a majority thereof, shall appear just and equitable;" and also "power to add and assess omitted property," notice to the owner to be given, as prescribed in the last case. Finally, as held in *State* v. *Wood*, 110 Ind. 82, to aid the board in the discharge of all these duties, it is further provided that they "may send for persons and papers."

As a further aid to the board in the exercise of the powers enumerated above, and particularly in their making the preliminary investigation and inquiry re-. ferred to in the information filed with the court, it was provided in section 6317, R. S. 1881, then also in force, that: "For the purpose of properly listing and assessing property for taxation, and equalizing and collecting taxes, county auditors, auditor of State, and boards of equalization, shall each have the right to inspect and. examine the records of all public offices, and the books and papers of all corporations and tax-payers in this State, without charge; and they shall also have power

to administer all necessary oaths or affirmations in the discharge of their duties."

It is not easy to see how the statute could have more fully conferred upon the board the power to do what it was attempting to do in this case. "Having these powers," as said in *State* v. *Wood, supra,* "it is clearly the duty of the board to exercise them in proper cases."

It is also well said in that case : "The power to add and assess omitted property, in many cases, would amount to but little, if the board had no power to investigate and determine whether or not property had been so omitted." And again : "The power to add and assess omitted property carries with it the power to investigate and determine as to whom the property belongs, and whether or not it has, in fact, been omitted from the tax lists of the owner. And the power to make such investigation includes the power to get information from the supposed owner and other witnesses. See Bishop Statutory Crimes, section 137."

Indeed, the case of *State* v. *Wood, supra,* substantially decides the chief, if not the sole, controversy in this case, namely : That the board of equalization had the power to investigate and determine whether or not Willard Parks, or any one of the other twenty-five taxpayers, was the owner of money, notes or bonds on deposit in said bank, "which he had not included in his tax lists, and which was, therefore omitted property, and that, in order to make the investigation, it had the power to examine witnesses ; and further, that, having such power, it was in the exercise of a duty."

There is nothing in the contention of counsel, made in support of appellant's excuse in his second paragraph of answer to the rule to show cause, namely, that no notice had been issued to any tax-payer that the board was about to assess property omitted by him. The board was

not at the time attempting to assess any such omitted property, as the information shows, but was making a preliminary examination under the statute to determine whether any property was omitted.

Counsel for appellee well remark in this connection, that :

"The board in this case was duly organized, it had the right and power to make a preliminary investigation, to ascertain for its own information, as a basis for further proceedings, if necessary, whether any tax-payer of the county had omitted or concealed property that was subject to taxation, and, in the exercise of this duty, to swear and examine witnesses ; and then, if upon this investigation, it should be determined to proceed further, to give the required notice, and let the individual tax-payer come before the board and be heard in his own defense or explanation. Any other construction of these statutes would be strained and narrow, and defeat both the letter and the spirit of the law."

It is said that the board was not a court, and could not, therefore, punish for contempt. That was evidently the opinion of the board itself when the information was filed in the circuit court. The court issued its mandate to require the appellant to comply with the provisions of the law, and on his default herein, issued a rule against him to show cause why he should not be punished as for contempt, in refusing to obey the mandate of the court.

The board had authority to make the investigation. It had authority by any member of it to administer the oath to the witness, and it had authority to require him to be sworn and answer as to the matters inquired of him.

"Where the statute," says Mr. Bishop, *supra*, "gave the king's justices power 'to take the oaths' of persons, it

carried with it, by intendment, authority to issue their precept, and bring the persons before them to be sworn." *State* v. *Wood, supra.*

Whether the circuit court had power to require the appellant "to answer generally" the questions propounded by the board, we need not inquire. The very conservative order of the court required only that appellant answer, "as to any person or corporation of said county, named or mentioned by said board;" and that "he permit the said board to inspect and examine the books of the said bank in his said custody and control, in order to ascertain if any person or corporation of said county, that may be mentioned by it, had money, notes, or bonds deposited therein on the said first day of April, 1890."

Nor was this "a public examination," "dragnet," or "prying into the private business" of any one, any more than is any legal listing and assessment of taxes. Such inquiries are always proper on the part of assessing officers, and sometimes necessary, in order to learn what property should be placed upon the tax lists. The inquiries are moreover directly authorized by the statute.

The examination, as said in the order of the court, was to be made solely in order that the board might "discharge its duties in the premises, investigating as to what property, if any, belonging to persons and corporations of said county, owned and held by them on said first day of April, had been omitted from being assessed and returned for taxation for the year 1890."

The law will not presume that the board had a right to send for the witness and ask him proper questions, and yet that he may not be compelled to answer. The court could not direct what answer he should make, but it had the power by mandate to order him to answer.

Section 1182, R. S. 1894, (section 1168, R. S. 1881); provides that: "Writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station."

In the case of *Commonwealth* v. *Commissioners*, 37 Pa. St. 277, it was said: "Mandamus is a high prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others, who either neglect or refuse to perform them. It follows, therefore, that those to whom it may be appropriately directed, owe some duty to the public, and are under obligation to perform it; and for the enforcement of which there is no other specific legal remedy."

The appellant, indeed, did not question the power of the court to issue the order requiring him to appear again before the board and answer the questions as stated in the order, but appeared and demurred, and on the issue of the mandate obeyed it so far as appearing again before the board. The refusal to answer the questions of the board was based solely on the ground that the board had no right to ask them. In this he was mistaken, as we have seen.

The State and the public had a right to the information thus sought to be elicited, and in the manner in which it was sought, in order to secure general and uniform assessment and taxation of all property.

The judgment is affirmed.

JORDAN, J., was absent during the consideration and decision of this case.

Filed May 2, 1895.

## ON PETITION FOR REHEARING.

HOWARD, C. J.—In their petition and brief for a rehearing of this appeal, counsel for appellant have, as we think, sought to build up a case outside the record, and on that vantage ground they have attempted to show that the opinion of the court is erroneous. Were the board of equalization in the case before us proceeding to assess any omitted property, much of what counsel say might be in point. From the information, however, we learn that the board was in session, "investigating according to law, and inquiring into," the alleged fact that divers tax-payers had omitted property from assessment. Counsel do not deny that the board had, in fact, the power to add and assess omitted property; but they contend that before any such property shall be added to the list and assessed, notice must be given to the owner. To this we agree entirely. But, as already cited from *State* v. *Wood, supra:* "The power to add and assess omitted property carries with it the power to investigate and determine as to whom the property belongs, and whether or not it has, in fact, been omitted from the tax lists of the owner. And the power to make such investigation includes the power to get information from the supposed owner and other witnesses." The business in which the board was engaged in the case before us, was not in assessing omitted property, but in finding out whether there was any omitted property.

Counsel take a strange position in practically assuming that there can be no such preliminary examination. The property of all other tax-payers may be inquired into, from themselves or from any other witnesses, preliminary to listing the same for taxation; and no good reason can be given why depositors in banks should form an exception to the rule. If on such examination there

should be any indication that any person's property had been omitted from the assessment lists, then is the time when the board may notify him to appear and show, if it be true, that such property has in fact not been omitted, or that no such property is in existence. If there be no preliminary examination, it may well be that the board might never learn whether any property was omitted; or, if there was any such omission, they might never learn who is the owner. All rights are saved to the owner, provided there be no assessment of the property until he has received notice to attend and be heard. He cannot complain because the board sees fit to exercise its statutory right to first try to find out whether any property has probably or possibly been omitted.

We think also that counsel go outside the record when they draw our attention to what information the board originally sought, and what mandate they asked from the court. A plaintiff may ask more than the trial court will give; but the appeal is not from the complaint, but from the judgment. If the judgment was clearly right, it is not material that the plaintiff should have prayed for more than the court saw fit to grant. The decree of the court must be within the pleadings, but it is not necessary that it should give all that is asked; nor will the judgment be erroneous simply for the reason, if it should be so, that the plaintiff had demanded more than he was entitled to.

The order of the court was that the appellant "answer as to such questions as may be propounded to him by said board, touching or relating to the said investigation, *as to any person or corporation of said county named or mentioned by said board.*" The inspection of the books by the board is permitted only to the same extent, namely : "in order to ascertain if *any person or*

*corporation of said county, that may be mentioned by it,* had money, notes or bonds on deposit, etc."

The order of the court so made was clearly within the letter and spirit of the statute.   Indeed, it would seem that counsel's contention is rather against the statute than against the decision of the court; and if the position of counsel were correct, we are inclined to think they should ask for the overthrow of the statute, (section 6317, R. S. 1881) which expressly provides that "for the purpose of properly listing and assessing property for taxation, and equalizing, and collecting taxes, county auditors, auditor of State, and boards of equalization shall each have the right to inspect and examine the records of all public offices, and the books and papers of all corporations and taxpayers in this State, without charge; and they shall also have power to administer all necessary oaths or affirmations in the discharge of their duties."   From appellant's able and earnest briefs one would never think that such a statute as this was in existence at the date of the order violated by appellant.   The law, by its very terms, applies to all tax-payers of the State, whether corporations or natural persons ; and it is the duty of the courts to apply it as it stands on the statute books.

The petition is overruled.

Filed June 14, 1895.


## DISSENTING OPINION.

McCabe, C. J.—It is to be regretted that the conclusion reached in this case could not be unanimous.   But I am constrained to disagree with the conclusion of the majority.   It appears from the record, that the alleged contempt consisted of the refusal of the appellant to comply with the order of the circuit court requiring

him to answer certain questions put to him by the board of equalization of the county, convened in the county commissioners' court room, in Martinsville, in said county of Morgan. Such board had subpœnaed him, when so convened, and propounded certain questions, which he refused to answer. His refusal was made known to the circuit court by an information regularly filed, whereupon a rule was entered, and served upon him, to show cause why he so refused. It appears from his showing, in response to the rule, and from the record, that he was the president of the First National Bank of Martinsville, in said county, duly organized under the laws of the United States; that the board was seeking to find out from him what tax-payers of the county had deposits in said bank on the first day of April, 1890, with a view, if any such were found, of adding such deposits to the list or lists of such tax-payers, in case they had not already been listed for taxation by such tax-payers.

The only law in force at that time under which it is sought to justify the action of the board and the circuit court were section 6317, R. S. 1881, and section 6397, R. S. 1881, as amended by act of March 9, 1889, of our former tax law. Elliott Sup., section 2127. The former section reads as follows: "For the purpose of properly listing and assessing property for taxation, and equalizing, and collecting taxes, county auditors, auditor of State, and boards of equalization shall each have the right to inspect and examine the records of all public offices, and the books and papers of all corporations and tax-payers in this State, without charge; and they shall also have power to administer all necessary oaths or affirmations in the discharge of their duties; and it shall be the duty of every assessor or other officer charged with the duty of listing property for

taxation, or charged with the duty of collecting taxes, to give, in writing, all information he may acquire in reference to the concealment of property from taxation by any person or corporation before mentioned to county auditors, auditor of State, or boards of equalization aforesaid."

The amended section 6397 (Elliott's Supp., section 2127) provides, among other things, that such board of equalization shall be composed of the commissioners of the county and four freeholders of the county, to be appointed by the circuit court, to be called the county board of equalization. "The board shall meet, for the purpose of equalization, in the room of the county commissioners, in the court house of each county, on the third Monday of June, annually. Two weeks' previous notice of the time, place, and purpose of such meeting shall be given by the county auditor in some newspaper of general circulation * * * in the county. * * * Such board shall have the power to hear complaints of any owner of personal property, * * and to correct any list or valuation as they may deem proper. It shall also have power to equalize the valuation made by the assessors, either by adding to or deducting from their valuations, such sums as * * * shall appear just and equitable, and in the discharge of this duty may send for persons and papers. Such board shall also have power to add and assess omitted property, * * * or to increase the valuation placed upon property that has been listed for taxation. It shall cause the names of persons to whose lists property is to be added, or the valuation of whose property is to be increased, to be inserted in the notice hereinbefore provided for, * * * or cause to be served upon the person to whose list property is to be added, or the valuation of whose property is to be in-

creased, a written notice that it is proposed to revise or correct his list. * * * The tax-payer whose list it adjudges shall be revised or corrected as aforesaid, shall be liable for all costs occasioned by such revision or correction."

The only authority conferred on the board by section 6317 is "the right to inspect and examine the records of all public offices, and the books and papers of all corporations and tax-payers in this State without charge," and administer oaths, etc. The power attempted to be exerted in this case is not conferred in the right to inspect and examine the records of all public offices, because a bank is not a public office, nor is the power claimed created in the right to inspect and examine the books and papers of all corporations, because that would confer such right as against incorporated banks and leave unincorporated banks entirely free from such liability. It is obvious that the Legislature never intended to make such a discrimination in favor of unincorporated banks, and therefore had no reference to banks in the use of the word corporations. But in conferring the right to inspect and examine the books and papers of all tax-payers in this State, the right to examine and inspect the books of all banks in the State is necessarily included. But the right to examine and inspect the books and papers of a tax-payer, in my opinion, is given for the sole purpose of enabling the officers and boards of equalization to properly assess and tax the property of such tax-payer and not for the purpose of enabling them to assess and tax other tax-payers' property, or for the purpose of enabling them to discover property of other tax-payers concealed for the purpose of avoiding taxation. Moreover, this right to inspect and examine the records of all public offices and the books and papers of all corporations and tax-payers in this State, evi-

·dently, in my opinion, was never intended to authorize the county boards of equalization to summon the keeper of such books to bring the same before such boards to be inspected. Because that would involve the right of the State board of equalization and the State auditor to summon the clerk of the circuit court and the recorder of the remotest county in the State to the State capitol to bring with them the public records of their respective offices. This is so, because the same words that confer power on county boards and county auditors confer on the State board of equalization and the State auditor the same power or right. It would, it seems to me, be very unreasonable to suppose that the Legislature intended by the language employed to confer the right and power on the auditor of State and the State board of equalization to compel county officers to transport the records of their offices to the State capitol to be examined and inspected by the State board of equalization or the State auditor.

If that is so, it then follows necessarily from the language employed, even if we concede that banks (which cannot be) are included in the word corporations, that they cannot be required to transport their books to any other place for inspection and examination by the boards of equalization, either State or county.

The court does not seem to have made the order comprehensive enough to require the appellant to produce the books of the bank before the board, but did require him to answer all questions the board might ask him as to deposits by any person or corporation of said county named or mentioned by said board, who had money, notes, or bonds on deposit, or in the custody or control of the bank, on the first day of April, 1890, and also that he answer as to persons or corporations of said county who, before the said first day of April, had con-

verted his or her taxable money into United States notes called "greenbacks," or into other nontaxable securities of the United States, and, further, that he permit said board to inspect and examine the books of said bank in his custody and control.

It does not appear that the board, or any member thereof, ever applied at the bank and requested to be allowed to inspect any book or books or any paper or papers of said bank for any purpose whatever, nor does it appear that any such right was refused at the bank or place of business of such bank by the appellant or any one else.   The appellant, therefore, was not guilty of wrongfully refusing the board the right to have the books of the bank produced before them while in session and to have an inspection thereof, even though the board had jurisdiction to carry on the investigation in which they were engaged.

The question then remains, did the appellant wrongfully refuse to answer the questions propounded?   That question must be answered by a consideration of the amended section 6397, above quoted.   It confers three distinct powers on the county board of equalization :

1.   To hear the complaints of any owner, etc.

2.   To equalize the valuation made by assessors, either by adding to or deducting from their valuations such sums as   *   *   *   shall seem just and equitable, and in the discharge of this duty may send for persons and papers.

3.   Such board shall also have power to add and assess omitted property   *   *   where it deems it necessary to add omitted property, or increase the valuation placed upon property that has been listed for taxation.

The power to send for persons and papers, annexed to the second power conferred, namely, to equalize valuations, etc., was held in *State* v. *Wood*, 110 Ind. 82, to

apply also to the other two powers, namely, hearing complaints of owners, etc., and hearing cases for adding omitted property and increasing the valuation placed upon property previously listed. No question of want of jurisdiction of the board of equalization for lack of notice to the tax-payer whose list was to be revised was involved in that case.

It is clear that the board was not, in the case before us, engaged in the exercise of the first or second power conferred or duty imposed by the above section, nor is there any claim made that they were so engaged when appellant refused to answer the questions of which the board complained. It remains to be considered whether they were exercising the third power conferred when appellant refused to answer their questions. As we have seen that power was "to add omitted property, or to increase the valuation placed upon property that has been listed for taxation."

The board has no power except such as is expressly conferred by statute and such as is necessarily implied to effectuate the powers expressly conferred. *White* v. *Conover,* 5 Blackf. 462; *Mossman* v. *Forrest,* 27 Ind. 233; *English* v. *Smock,* 34 Ind. 115; *Gavin* v. *Board, etc.,* 104 Ind. 201. It was not a court, but was clothed with and required to exercise *quasi judicial* powers and duties. *State* v. *Wood, supra.* The power "to add omitted property, or to increase the valuation placed upon property that has been listed for taxation," carries with it by implication the power to bring before the board any competent evidence of such omission or undervaluation. *State* v. *Wood, supra.* But this implied power can only be exercised in connection with and incidental to the exercise of the main power to add omitted property or increase the valuation, etc. This power cannot be exercised by them at all without giving the notice

prescribed by the statute to the person or persons to whose list property is to be added, or the valuation of whose property is to be increased. *Kuntz* v. *Sumption*, 117 Ind. 1 (2 L. R. A. 655). The second paragraph of the answer states, and the demurrer admits, that no notice had been given to any such tax-payer, nor is any claim made here that there had been such notice given; but it is claimed that the board was engaged in a preliminary investigation to ascertain if any of the depositors in said bank had failed to list their deposits, or rather to ascertain if any tax-payer who had listed no deposits on April 1, 1890, had deposits in said bank at that time ; that they had a list of some twenty-five of such about whose deposits they proposed to inquire. The appellant objected to answering as to such inquiries without any person or persons being named against whom it was claimed that they had omitted to list their deposits, or that they had exchanged taxable funds for nontaxable on the ground that no notice had been given to any of such tax-payers of such proposed action. And therefore appellant claimed that the board had no jurisdiction to pursue the investigation. If they did not have such jurisdiction, they had no power to administer any oath to appellant. 18 Am. and Eng. Ency. Law 303, section 2, and authorities there cited; Burns R. S. 1894, section 1816 ; R. S. 1881, section 1747. This is especially true in this case, because the only power conferred on them in that direction is found in section 6317, above quoted, which is that "they shall also have power to administer all necessary oaths or affirmations in the discharge of their duties." If they had no power to pursue the investigation, it was no part of their duty to pursue it, and hence any oath administered by them therein was without authority, because not administered in the discharge of their duty. If they had no power to admin-

-ister any oath to appellant, any false answers he might have made to questions put to him would not have con-stituted perjury.   18 Am. and Eng. Ency. Law, *supra*, Burns R. S. 1894, *supra*; *State* v. *Wood, supra.*

If the questions and the investigations they related to were outside of the jurisdiction of the board, then the refusal to answer them was not a contempt.    Vanfleet Collateral Attack., section 754, and authorities there cited.    Disobedience of an order of court that had no jurisdiction, where there is a want of authority, is not a contempt.    3 Am. and Eng. Ency. Law. 788, section 4, and authorities there cited in note 1.    Acting against an erroneous order of the court is not a contempt.    3 Am. and Eng. Ency. Law, section 4, note 2, and au-thorities there cited.

It does not seem to me that in the absence of a notice to some tax-payer whose tax list is the subject of investi-gation, there can be any question that the board had no jurisdiction to pursue such investigation, and hence had no power to require appellant to answer any question in relation thereto, and that the circuit court had no authority to require him to do so, any more than if said board had been a body of private gentlemen who took it into their heads to find out all about the private affairs of the bank and its depositors for their amuse-ment or private gain.

But it is sought to be maintained that a preliminary investigation is essential to enable the board to know who to notify of the purpose to revise their tax lists, and my brothers in the prevailing opinion uphold that contention.    And it is conceded by the appellees and the prevailing opinion, that such investigation previous to notice cannot result in anything at most beyond fur-nishing the board information who to serve notice upon with a view of going over the evidence again to revise

such persons' tax list. The obstacle in the way of this theory is that there is nothing in either section of the statute authorizing the county board of equalization to institute any such preliminary investigation or proceeding in their capacity of a *quasi* judicial body. Besides, it is contrary to all the analogies of the law.

The circuit court, being a court of general and almost unlimited jurisdiction, could exercise no such wonderful power as that claimed and asserted here for this *quasi* judicial body. Many cases are begun in the circuit court which perhaps would never have been begun if the plaintiff could be allowed to institute a preliminary trial or investigation, without being responsible for costs, to find out what the evidence is going to be. Who would claim that such a proceeding could be maintained? In addition to the objection that the circuit court would have no jurisdiction for want of notice to the opposite party, there is the other substantial objection that it authorizes two trials substantially of the same cause, and one of them without jurisdiction or effect. And that is the effect of the holding in the prevailing opinion. It in effect allows two trials of the same matter. One in the absence of the party to be affected and the other in his presence or on notice to him. On the first trial there is no provision made for the payment of the costs thereof, on the second there is. That is an additional reason why the Legislature intended that there should be but the one trial, the one in which the tax-payer is brought in with notice, and in which he is made liable for costs if his list is revised.

But if the theory of the two trials prevails, on the second, when the tax-payer is brought in by notice, all the evidence must be gone over again in his presence and hearing, or the notice to him amounts to nothing more

than notifying a party after he has been tried without notice to come in and show cause why judgment shall not be rendered against him on the evidence heard in his absence. He does not know what has been proven against him, and hence does not know where to begin or what evidence to introduce. That would be a mockery of justice. But if to this it is answered that such injustice may be obviated by going over the evidence again in his presence, that was introduced against him before the board in his absence, and before he had notice, such answer is not good; because he is made to depend wholly on those unfriendly and whose interests are adverse to him to bring again before the board the same, and all, evidence they heard in his absence. If they fail in this, his case may be lost simply because some adverse item of evidence had been heard by the triers in his absence and of which he was never informed, and which, if he had been correctly informed, he could have met and overcome. Besides, a deal of incompetent evidence might have been adduced on the preliminary investigation in his absence before the triers, where he had no opportunity to keep it out by objection. It has made a lodgment in the minds of the triers; indeed, it has caused them to form and express an opinion as to the merits of the case against him. To offer him a trial then, by even going over all the evidence, looks to me strongly like a mockery of justice. In fact, it is very little better, if any, than letting the board decide against him on the first or preliminary investigation or trial without notice to him at all.

For these reasons I am constrained to withhold my assent to the conclusion reached by my brothers in the prevailing opinion, and to believe that the board had no jurisdiction for want of notice to any tax-payer, and that

the circuit court erred in attempting to compel the appellant to answer questions touching such investigation; and I am therefore of the opinion that the judgment ought to be reversed.

Filed May 2, 1895.